UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>TYSHAWN MCDADE,<br>        Defendant. | No. 3:14-cr-00081-6 (JAM) |

### RULING DENYING MOTION OF DEFENDANT TYSHAWN MCDADE TO SUPPRESS TITLE III WIRETAP EVIDENCE

Defendant Tyshawn McDade has filed a motion to suppress the contents of intercepted cell phone calls that the government obtained pursuant to a wiretap warrant issued by Judge Arterton on December 13, 2013. Defendant argues that the government's application for the wiretap warrant did not adequately show that a wiretap was necessary in light of alternative investigative methods. Magistrate Judge Fitzsimmons rejected this argument, concluding that "[t]he applications and their supporting affidavits were more than 'minimally adequate' to support Judge Arterton's determination that electronic surveillance would be necessary and that normal investigative procedures had been tried and had failed, reasonably appeared to be unlikely to succeed, or were too dangerous to employ." Doc. #526 at 10.

Defendant has now filed an objection to that portion of Judge Fitzsimmons' ruling.[1] He does not challenge Judge Fitzsimmons' factual findings, nor does he point to any error by Judge Fitzsimmons in her conclusions of law. I interpret defendant's objection to be to Judge Fitzsimmons' application of the law to the facts as set forth in the wiretap application in this case, and my review is *de novo* as to Judge Fitzsimmons' application of the law to the facts here. *See, e.g.*, *United States v. Rosa*, 11 F.3d 315, 328 (2d Cir. 1993).

---

[1] Defendant does not otherwise challenge Judge Fitzsimmons' ruling insofar as it dismissed other grounds raised for suppression (Doc. #526 at 7–10) or denied an evidentiary hearing, and therefore I adopt her recommended ruling as to each of these non-contested grounds.

1

That said, defendant ultimately seeks review of the determination of Judge Arterton to approve the wiretap warrant in this case. In this context, a reviewing court must "grant considerable deference to the district court's decision whether to allow a wiretap, ensuring only that 'the facts set forth in the application were minimally adequate to support the determination that was made.'" *United States v. Concepcion*, 579 F.3d 214, 217 (2d Cir. 2009) (quoting *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997)).

The federal wiretap statute (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*) governs the procedure for the government to obtain judicial authorization to intercept electronic communications of those suspected of engaging in certain crimes. Because wiretapping is an obvious intrusion on individual privacy, the wiretap statute requires—among other protections—that a wiretap application be granted only if a judge finds that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

This requirement is ordinarily referred to as the "necessity" requirement. It reflects Congress's intent "that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). Still, however, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance." *Concepcion*, 579 F.3d at 218. The necessity requirement "'only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.'" *Ibid.* (quoting *United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999)).

Moreover, necessity depends on context. The government's resort to a wiretap is more

likely appropriate "in complex and sprawling criminal cases involving large conspiracies" that are less susceptible than run-of-the-mill criminal cases to detection by means of traditional investigative methods. *Ibid.*

The wiretap application in this case—a sprawling drug conspiracy involving more than two dozen defendants who have been charged in the pending indictment—easily satisfies the necessity requirement. Over the course of 18 pages in the wiretap application, the FBI affiant attested to law enforcement's use of numerous alternative investigative methods that had met with varying degrees of success and that had yet to disclose the full scope of the conspiracy, its sources of narcotics supply, the identities of additional principal members of the conspiracy, the stash locations for narcotics, and the flow of narcotics proceeds. The wiretap affidavit describes at length the use of alternative investigative methods (and details reasons for declining to use certain methods), including cooperating witnesses and confidential sources, undercover law enforcement officers, physical surveillance, pen registers and telephone toll records, grand jury subpoenas, search warrants, garbage seizures, fixed surveillance cameras, tracking devices, and monitoring of prison phone calls.

Notably, defendant does not dispute that the government used alternative investigative methods. Instead, he contends that these methods were so successful that a covert wiretap was not needed. Doc. #584-1 at 2. First, he points to the fact that the government discovered that two of the principal co-conspirators purportedly boasted of their drug-dealing activity on a rap video posted to YouTube, and he contends that "the video clearly reflects a policy of openness" by the conspirators that is "highly unusual." *Id.* at 3-4. But the video at issue was not made until the month *after* the application for the wiretap in this case, and therefore anything about this video is irrelevant to whether the necessity requirement was established at the time of the government's

application for the warrant in this case.

Similarly, defendant argues that the co-conspirators were operating "in the open" because "[o]n one occasion, police surveillance saw . . . an individual with a bag with a white substance in plain view." Doc. #584-1 at 3. This single occasion fails to show that law enforcement could have exposed and gathered necessary evidence of the entire conspiracy by traditional investigative means. Nor am I persuaded by defendant's argument (*id.* at 4-5) that any necessity was negated by the fact that law enforcement had successfully acquired information about narcotics activities at a single location (Randy's convenience store in Hartford). Indeed, "the mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap." *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000).

In short, I conclude that the government's wiretap application amply established a basis for Judge Arterton to conclude that a wiretap was necessary to advance the investigation in this case. Because the facts set forth by the government were minimally adequate to support the necessity for a wiretap warrant, I deny defendant's motion to suppress.

## CONCLUSION

I adopt Judge Fitzsimmons' Recommended Ruling (Doc. #526) to the extent that it addresses defendant's motion to suppress (Doc. #422), and defendant's motion to suppress (Doc. #422) is DENIED.

It is so ordered.

Dated at Bridgeport this 7th day of May 2015.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge